EMILIO M. GARZA,
Circuit Judge,
dissenting:
Because I conclude that the sixty-day period in which an appellate court must decide a CAFA appeal begins to run on the date the § 1453(c) appeal is filed, I respectfully dissent.
§ 1453(c)(2) states, “[i]f the court of appeals accepts an appeal under [this subsection], the court shall complete all action on such appeal ... not later than 60 days after the date on which such appeal was filed.” 28 U.S.C. § 1453(c)(2) (emphasis added). The majority reads the statute to state that all action must be completed not lafer than sixty days after the appeal was accepted. By using different words, however, the statute plainly creates a distinction between the acceptance of an appeal and its filing.
The majority states that Congress intended CAFA appeals to be governed by the same procedures, including Federal Rule of Appellate Procedure 5, as appeals pursuant to § 1292(b). From that premise, the majority reasons that, because Rule 5 equates the date of an order granting permission to appeal with the date of a notice of appeal, courts construing § 1453 should equate the date of an order granting permission to appeal with the date on which a CAFA appeal was filed. This argument is problematic for three reasons. First, neither the statute itself nor the legislative history evinces an intent to have both types ,of appeals be governed by the same procedures. Indeed, because § 1453(c) and § 1292(b) use different language to describe the initiation of appeals, courts should be hesitant to read them in pari materia. Compare § 1453(c) (“[A] court of appeals may accept an appeal from an order of a district court.”) with § 1292(b) (“The Court of Appeals ... may ... permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.”). Second, CAFA’s appellate deadlines constitute a significant departure from the procedures that govern § 1292(b) appeals, which do not require appellate courts to render decisions within a given time frame. Thus, even if Congress intended the two types of appeals to be governed by similar procedures as a general matter, Congress’s manifest intent to have CAFA appeals decided more quickly than ordinary interlocutory appeals suggests that courts ought not look to § 1292(b) procedures for guidance as to how to calculate time for purposes of CAFA appeals. Finally, Rule 5(d)(2) explains how courts should calculate time “under these rules.” It does not govern the time tables in § 1453(e) or any other independent statutory provision. It is perfectly consistent, therefore, to conclude both that CAFA appeals are subject to Rule 5 and that the sixty-day period begins on the date the petition for permission to appeal is filed.
*371 The majority ignores the indicator of legislative intent in the congressional record. In support of amendments agreed to by several senators, Senator Dodd introduced a report explaining that CAFA “[establishes tight deadlines for completion of any appeals so that no case can be delayed more than 77 days.” 151 Cong. Rec. S1076-01, 1078-79 (2005). The Ninth Circuit concluded that this seventy-seven-day period “presumably consists] of seven days to file an appeal, 60 days to decide the merits of the appeal, and a possible 10-day extension of time for good cause.” Amalgamated Transit Union Local v. Laidlaw Transit Serv., Inc., 435 F.3d 1140, 1144 (9th Cir.2006). Under the majority’s interpretation of the statute, a typical CAFA appeal in this circuit would likely stretch beyond that seventy-seven day limit.
Finally, the majority misapprehends the significance of the loophole created when the sixty-day period begins to run only when the order granting the petition for permission to appeal is filed.[1] The question is not whether courts can trust themselves not to make an end-run around the statutorily imposed deadlines. The question is whether Congress, in imposing strict deadlines for CAFA appeals, is likely to have intended a scheme that includes a simple way to evade those deadlines altogether.
The statutory language, the congressional record, and the conclusion that Congress did not intend to impose a statutory timetable that could be easily circumvented, all demonstrate that the sixty-day period should begin to run on the date the petition for permission to appeal is filed, not on the date that petition is granted. Accordingly, I respectfully dissent.

. Furthermore, the majority’s statement that there is potential for abuse under either interpretation is misleading. Whenever the sixty-day period begins, the appellate court can choose to drag its feet and allow the period to lapse. There is a unique potential for abuse, however, when the sixty-day period begins on the date the appeal is accepted because a circuit court could delay ruling on a CAFA appeal for months. Congress manifested a preference for having no review on the merits over making the parties wait indefinitely while a court considers the issues. Interpreting the statute as the majority does allows appellate courts to ignore that preference.